UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 09-52647 |
| | * | |
| PREMIER GENERAL HOLDINGS, LTD., | * | |
| | * | |
| DEBTOR. | * | CHAPTER 7 CASE |

# RESPONSE OF DILLON WATER RESOURCES, L.P. AND DEAN DAVENPORT TO DEBTOR'S ANSWER, MOTION FOR ORDER DISMISSING INVOLUNTARY PETITION AND COUNTERCLAIM

TO THE HONORABLE LEIF M. CLARK, UNITED STATES BANKRUPTCY JUDGE:

This is the RESPONSE OF DILLON WATER RESOURCES, L.P. AND DEAN DAVENPORT TO DEBTOR'S ANSWER, MOTION FOR ORDER DISMISSING INVOLUNTARY PETITION AND COUNTERCLAIM.

## Introduction

1. After being the subject of conversion and conspiracy, Dillon Water Resources, L.P. and Dean Davenport brought suit in state court. After long and expensive litigation a jury verdict resulted in a Final Judgment against Premier General Holdings, Ltd. and Mark Wynne for $59,934,033.94. Although the judgment debtors have appealed and posted small cash bonds as supersedeas, the Final Judgment is not subject to bona fide dispute. The petitioning creditors were compelled to initiate this involuntary petition because the proven track record of the judgment debtors indicated that it was likely they would breach a partnership agreement again to the damage of the judgment creditors and because the only significant recovery on the Final Judgment would take place only if an Order for Relief was entered against Premier General Holdings, Ltd.

## Factual Background to Claims of Petitioning Creditors

2. Since at least 1986, Dean Davenport ("Davenport") has been in the business of drilling water wells for third parties. Since 1997, Davenport conducted this business through Davenport Drilling and Pump

Service, Inc., now known as 5D Drilling, a corporation owned by his mother ("5D Drilling"). In the late 90's, recognizing the need for water supplies in Bexar County, Davenport had the idea of acquiring and developing water for sale to the public. Davenport brought this idea to Mark Wynne ("Wynne") and James Allen ("Allen"), leading to the formation of Water Exploration Co., Ltd. ("WECO") in October, 1999. Here is the WECO corporate structure:



Davenport formed and owns Dillon and its general partner, Davenport Operating, LLC, now known as 5D Water Resources, ("5D Water"). Wynne owns or controls Premier and its general partner, Water Drilling Management. Allen owns or controls J. Allen Family Partners, Ltd. ("Allen Family") and its general partner, J. Allen Investments, Inc.

3. After the formation of WECO, Davenport identified and proceeded to drill for WECO 47 water wells, through 5D Drilling, at a substantial discount to WECO and financial loss to 5D Drilling. To the extent that the wells have been brought on line, the water is being sold to Bexar Metropolitan Water District ("Bexar Met"), generating profits for WECO. As it became clear that WECO would become profitable, Wynne and Allen, acting individually and through Premier and Allen Family, entered into a plan to convert Dillon's ownership interest in WECO, and a conspiracy to damage Dillon. Unknown to Davenport, on or about March 22, 2002, 5D Water's charter was revoked by the Texas Secretary of State because it inadvertently failed to file its Periodic Report. Similarly, the charter of 5D Drilling was also forfeited. Wynne and Allen became aware of the charter forfeitures. In the furtherance of their conspiracy, they formed limited liability companies named "Davenport

Operating, LLC" and "Davenport Drilling & Pump Service, LLC" on August 31, 2005, just twelve days before WECO signed its first contract with Bexar Met on September 12, 2005. These new entities used Davenport's name and duplicated the names of his companies. At trial, Wynne testified "all we wanted is to take his ("Davenport's") share…" in WECO. Subsequently, Premier and the codefendants; excluded Dillon and Davenport from WECO and WAD, Inc., and took the position that Dillon had forfeited its ownership interest in Premier because its general partner had its charter forfeited. Davenport and Dillon were forced to file suit.

4. In October, 2006, Dillon learned that Wynne, acting individually and through Premier, caused WECO to deliver to the lessor of 17 water wells a certificate from Brown Engineering Co. ("Brown") that performance tests had been performed on the wells before a March 1, 2003 deadline. It turns out that Brown had not done the tests before the deadline, that Wynne knew the tests had not been done but, nevertheless, caused Brown to state that they had been done. This fraudulent activity exposed WECO, and its members, to legal liability and economic loss and violated Premier's fiduciary duty to WECO.

5. At the conclusion of a jury trial, a verdict was rendered on January 23, 2009 in which the jury found, in part, that Premier and its codefendants had converted Dillon's interest in WECO; that the value of the interest was $70,000,000.00; that Premier and its codefendants had conspired to damage Dillon; that Dillon's damages were $70,000,000.00; that Premier anticipatorally breached the WECO Limited Partnership Agreement causing injury to Dillon; that Premier acted with malice towards Dillon; and Dillon and Davenport were awarded attorneys fees of $725,000.00, subject to remitter in the absence of appeals. The jury also awarded $1,000,000.00 in exemplary damages against Wynne and Allen.

6. Post-verdict, Dillon and Davenport settled with Allen and Allen Family, pursuant to which Allen Family assigned to Dillon its ownership interest in WECO and Allen assigned to Davenport his ownership interest in WAD, Inc. Because of the Allen Settlement, Dillon obtained control of WECO's financial and accounting records which had previously been denied to Dillon. Upon examination by a certified public accountant, it was learned that Premier and its codefendants had caused WECO to fund their legal defense in the action brought by Dillon and Davenport. For twenty-three months prior to June, 2008, Premier and the codefendants' counsel had his monthly invoices, largely for the legal defense of the State Court Action paid by WECO. In April and May,

2008, WECO received $950,000.00 from Bexar Met. Premier and its codefendants caused WECO to open a separate Money Market Account and deposited $400,000.00 in it. Premier and its codefendants caused WECO to wire $200,000.00 to their counsel in July, 2008. The jury's verdict was rendered January 23, 2009, a Friday. After the Allen settlement, Dillon and Davenport learned that, on January 27, 2009, the Tuesday after the verdict, Premier and its codefendants caused WECO to wire an additional $200,000.00 to their counsel and on February 4, 2009, $100,000.00 to their co-counsel. An additional $150,000.00 was wired to various appellate counsel. An audit of the WECO accounting records revealed that some of the entries relating to these transfers had been altered or deleted to disguise their existence, timing or purpose. After wiring all of the money out of the WECO money market account it was closed in February, 2009. But for the Allen settlement, Dillon would not have discovered any of these transfers from WECO caused by Premier and its codefendants.

7. A Final Judgment was entered May 12, 2009 awarding Dillon $59,834,033.94 in damages against Premier and Wynne, jointly and severally, and awarding Dillon and Davenport $725,000.00 in attorney's fees against Premier and Wynne, jointly and severally, subject to remitter.

8. Premier and Wynne have appealed the Final Judgment. On July 17, 2009, Premier filed its Notice of Filing Deposit in Lieu of Bond. Premier tendered a cashier's check for $1,000.00. To support its position that Premier's net worth was $333.00, Premier submitted Wynne's Affidavit that Premier's only current assets are its 333 units in WECO, which he valued at $333.00 and that it had no current liabilities. In State Court, Wynne had testified that a one-third interest in WECO was worth $2,500,000.00. After the Allen settlement, Wynne and Premier sought a settlement credit of $70,000,000.00 but their motion was denied. Now he says its worth $333.00.

Specific Responses

9. Dillon and Davenport deny the allegations in Paragraph 6 of Debtor's Answer, Motion for Order Dismissing Involuntary Petition and Counterclaim (collectively, "the Answer").

10. Dillon and Davenport deny the allegations in Paragraph 7 of the Answer

11. Dillon and Davenport admit the allegations in Paragraph 8 of the Answer.

12. With respect to the allegations in Paragraph 9 of the Answer, Dillon and Davenport admit that Premier filed a counterclaim against them but, after a trial on the merits, such counterclaim has been overruled and will not be resurrected on appeal since Wynne admitted at trial it is not supported by any evidence

13. With respect to the allegations in Paragraph 10 of the Answer, although Dillon and Davenport are insiders to one another that does not make this a "single creditor" case.

14. The allegations in Paragraph 11 of the Answer is a statement of the law which need not be admitted or denied.

15. Dillon and Davenport deny the allegations in Paragraph 12 of the Answer.

16. Dillon and Davenport deny the allegations in Paragraph 13 of the Answer.

17. With respect to the allegations in Paragraph 14 of the Answer, Dillon and Davenport admit that Premier has retained counsel but have insufficient information to admit or deny the balance of the allegations.

18. With respect to the allegations in Paragraph 15 of the Answer, Dillon and Davenport deny that Premier "conducts business" as that term is commonly understood although its registered office is in Bexar County.

19. Dillon and Davenport deny the allegations in Paragraph 16 of the Answer.

20. Dillon and Davenport admit the allegations in Paragraph 17 of the Answer.

21. With respect to the allegations in Paragraph 18 of the Answer, Dillon and Davenport admit that their Final Judgment arose out of a dispute related to WECO and that Premier has filed a Notice of Appeal and a $1,000.00 Cash Bond on a Judgment for $59,934,033.94 plus $750,000.00 attorneys fees.

22. With respect to the allegations in Paragraph 19 of the Answer, Dillon and Davenport deny that any of their actions or inactions violated the automatic stay, or if there was a brief, technical violation, adversely impacted Premier in any way.

Argument and Authorities on Motion to Dismiss

23.     In a recent Western District case, the Bankruptcy Court found that, while the use of Rule 12 Motion was allowed with respect to an involuntary petition, its benefits were limited and better practice was a fairly prompt trial on the merits.  In Re Rambo Imaging, LEXIS 3912 * 43-44 (Bankr. W.D. Tex. 2007).

                 A.   Premier Does Not Have More Than Twelve Creditors or
                     is Judicially Estopped From Taking That Position.

24.     Although it is unclear, Premier may be asserting, albeit improperly, that it has more than twelve (12) creditors.  If so, Premier has the burden of raising the issue that it has 12 or more creditors which has not been properly done.  In re Euro-American Lodging Corp., 357 B.R. 700, 714 (Bankr. S.D. N.Y. 2007).  If that is the case, then Premier has violated Bankruptcy Rule 1003(b) by failing to ever affirmatively state it has more than twelve (12) creditors and by failing to file with the Answer its required list.  If that is Premier's position now, it is directly inconsistent with its sworn affidavit in State Court to support its $1,000.00 Cash Bond on appeal which clearly states it has no current liabilities.  Premier's failure to comply with Bankruptcy Rule 1003(b) has prejudiced the petitioning creditors and the other creditors – if they exist at all.

25.     Judicial estopped is a common law doctrine that prevents a party, such as Premier, from taking inconsistent positions in litigation.  Feder, et al. v. Electronic Data Systems, Corp., 429 F. 3d 125, 135 (5th Cir. 2005); Jethroe v. Omnova Solutions, Inc., 412 F. 3d 598, 599 (5th Cir. 2005); In re Superior Crewboats, Inc., 574 F. 3d 330, 334(5th Cir. 2004).  The Fifth Circuit described judicial estoppel as:

> "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position…"  Because the doctrine is intended to protect the judicial system, *rather than the litigation*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary.

Jethroe, 412 F. 3d at 599, *quoting* Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F. 3d 197, 205 (5th Cir. 1999).  Judicial estoppel prevents a party from contradicting a previous, incompatible position when a court has adopted and relied on that prior position.  Engines Southwest, Inc. v. Kohler Co., 2008 U.S. App. LEXIS 1768

(5th Cir. 2008) (Memorandum Opinion). Judicial estoppel is designed to prevent a party from "playing fast and loose with the courts to suit the exigencies of self-interest." Coastal Plains, 179 F. 3d at 205 (citations and quotations omitted). Judicial estoppel may be applied to a party's prior inconsistent representations either of fact or of law. Transclean Corp., et al v. Jiffy Lube Int'l, Inc., et al., 474 F. 3d 1298 (Fed. Cir. 2007), *cert. denied*, 2007 U.S. LEXIS 9269.

26. Judicial estoppel operates to prevent Premier from taking a position in this action that is materially different from and inconsistent with the statement he made in his State Court Affidavit regarding Premier's liabilities. Khan v. Hakim, 201 Fed. Appx. 981, 982 (5th Cir. 2006) (Memorandum Opinion).

### B. Petitioning Creditors Are Not Insiders

27. Premier makes several arguments that Dillon and Davenport cannot be petitioning creditors because they are insiders of Premier. Nothing could be further from the truth, factually or legally, for two reasons. First, neither Dillon nor Davenport are insiders of Premier. Second, even an insider of the alleged debtor may be a petitioning creditor.

28. Dillon and Davenport are not insiders of Premier. Dillon and Davenport only have two connections to Premier, both of which are through WECO and WAD. First, Dillon and Premier are both limited partners in WECO. Second, Davenport owns shares in WAD, Inc., which is the general partner of WECO (The beneficial owner of Premier, Mark Wynne is also a fellow shareholder of WAD).

29. Dillon and Davenport do not meet any of the Bankruptcy Code's requirements to be considered insiders of the alleged debtor as limited partnership.[1] Premier's general partner is Water Drilling Management, Inc. Section 101(31)(C) defines the insiders of a partnership to include:

    (i)    the general partner in the debtor;
    (ii)   relative of a general partner in, general partner of, or person in control of the debtor;
    (iii)  partnership in which the general partner is a general partner;
    (iv)  general partner of the debtor;
    (v)   person in control of the debtor.

---

[1] For purposes of 11 U.S.C. §101(31), this Court should consider the alleged debtor limited partnership to be a "partnership."

Neither Dillon nor Davenport are general partners in Premier (sub i). Neither Dillon nor Davenport have or are relatives of Water Drilling Management or Mark Wynne (sub ii). Neither Dillon nor Davenport are partnerships (sub iii). Neither Dillon nor Davenport are general partners of Premier (sub iv). Finally, neither Dillon nor Davenport are persons in control of Premier (sub v). Likewise, neither Dillon nor Davenport meets any of section 101(31)'s requirements to be considered an insider of Premier if it were considered to be a corporation.

30. Neither Dillon nor Davenport are affiliates of the alleged debtor as that term is defined by 11 U.S.C. §101(2). The petitioning creditors are not insiders under subsections A or B because neither Dillon nor Davenport own, control, or hold shares in Premier nor does Premier own, hold, or control shares in Dillon or Davenport (an individual). Section 101(2)(C) provides that person whose business is operated under a lease or operating agreement with the debtor or substantially all of whose property is operated under an operating agreement with the debtor is an insider. This subsection does not fit Dillon or Davenport because they and the alleged debtor were both limited partners in WECO. WECO, not Premier, was the party who operated the business under an agreement with Dillon.

31. Furthermore although Congress intended the scope of the "insider" class to be expansive, to be included it must be established that the subject person or entity had a close relationship with the debtor or controlled the debtor. Matter of Fabricators, Inc., 926 F.2d 1458, 1465-66 (5th Cir., 1991); Matter of Missionary Baptist Foundation of America, 712 F.2d 206,209-10 (5th Cir., 1983). The evidence will establish that Dillon and Davenport had no close relationship with or control of Premier.

32. Dillon and Davenport may be petitioning creditors even if they are considered insiders. The limitation on "employees or insiders" of the alleged debtor found in section 303(b)(2) only prevents insiders from being counted towards the 12 creditor threshold; it does not prevent an insider from being a petitioning creditor. As a review of the case law will show, the Code excludes insiders and employees in the initial test to ensure that friendly creditors cannot thwart the petitioning creditor's right to file a bankruptcy. Once an insider stops being friendly, he has just as much right to file an involuntary petition as any other creditor.

33. Another bankruptcy Court in this District has held that an insider of the alleged debtor may file an involuntary petition. *In re: Henry Allen Green*, No. 06-11761-FRM, 2007 Bankr. LEXIS 1296, 9-12 (Bankr. W.D. Tex. Apr. 9, 2007). That Court specifically rejected the rule in the cases cited by Premier. *Id.*

34. Premier's chief case *In re: Runway II, Inc.*, 168 B.R. 193 (Bankr. W.D. Mo. 1994), offers only a thin reed in support of Premier's position. The petitioning creditor in *Runway II* was one of two 50% shareholders of a corporation. 168 B.R. at 194. Litigation between the deadlocked shareholders had placed the company in receivership, and the petitioning creditor had already tried to file a voluntary petition on behalf of the company, which was dismissed for lack of authority. 168 B.R. at 195. Thus, *Runway II* was the result of a dispute among insiders of a company *for control of the company*.

### C. There is no Bona Fide Dispute

35. The argument of Premier that there is a bona fide dispute as to the claims of Dillon and Davenport fails also. The Fifth Circuit has adopted an objective standard to determine if a bona fide dispute exists. Matter of Sims, 994 F.2d 210, 220-21 (5th Cir., 1993). Under this approach, the Bankruptcy Court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt. Id. at 221. It is the petitioning creditors' burden to establish a prima-facie case that no bona fide dispute exists. Id. The burden then shifts to the debtor to establish that "substantial" factual and legal questions exist bearing on the debtor's liability. Id. Under the objective standard, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. In re Rimell, 946 F. 2d 1363, 1365 (8th Cir. 1991). In this case, Premier's liability to Dillon and Davenport has been fixed as to liability and amount. In Texas, the judgment is final for the purpose of issue and claim preclusion despite the pendency of an appeal. Texas Beef Cattle Co. v. Green, 921 S.W. 2d 203, 207 (Tex. 1996); Scurlock Oil Co. v. Smithwick, 724 S.W. 2d 1, 6 (Tex. 1986). Even though Premier has attempted to supercede the Final Judgment with a $1,000.00 Cash Bond, that effort, even if successful, simply prevents enforcement of the Final Judgment pending appeal. Ex Parte Kimbrough, 146 S.W. 2d 371, 372 (Tex. 1941). It has no effect on the Final Judgment for purposes of issue and claim preclusion. See

Scurlock, supra at 6.  Matter of Walton Plywood, 227 F. Supp. 319, 325-26 (W.D. Wash. 1964) (Pre-Code Case applying Washington law).  Dillon and Davenport have more than met their burden.

36.     The Answer provides no support for Premier's argument that a bona fide dispute exists or that Premier can avoid the doctrines of issue and claim preclusion.  The existence of the Final Judgment largely eliminates the bona fide dispute issue as to the claims of Dillon and Davenport.  In re Byrd, 357 F. 3d 433, 438 (4th Cir. 2004).  Furthermore, the evidence adduced at trial, through Premier's controlling person, Wynne, included sworn admissions that he had tried to take Davenport's share in WECO and that there was no evidence to support the counterclaim of Premier and the codefendants.  Finally, the lack of a bona fide dispute is corroborated by the realities of the Allen settlement.  Allen and Allen Family settled with Dillon and Davenport by transferring their interest in WECO and WAD, Inc.  They would not have done so if they thought an appeal had any merit.

### D.  This is Not a "Single Creditor" Case

37.     Premier argues that Dillon and Davenport are insiders of one another and, therefore, a more strict scrutiny of this involuntary is required under the so-called single creditor rule.  While Dillon and Davenport are insiders to one another, they are separate entities, one an individual, the other a duly formed Texas limited partnership.  Their claims against Premier are distinctly different in that Dillon has a Final Judgment for $59,934,033.00 for damages caused by conversion and conspiracy resulting from malice.  Dillon and Davenport also have a separate award of $750,000.00, subject to remitter, for attorneys fees.  While Davenport owns the latter award jointly with Dillon, it is clearly a separate claim from Dillon's damage award.  On its face, this is not a single creditor case.

38.     Even if this were a single creditor case, those cases advocating a stricter scrutiny have had their reasoning persuasively questioned.  In re Concrete Pumping Service, 943 F.2d 627, 630 (6th Cir., 1991).  This is because the single creditor stricter scrutiny ignores the clear language of the statute which specifically permits "one or more" creditors to commence an involuntary if there are fewer than twelve creditors.  11 U.S.C. §

303(b)(2); In re Fischer, 202 BR 341, 346-47 (E.D. N.Y. 1996).

E. No Basis for Award of Damages

39. Any award under § 303(i) is purely discretionary and not required. 11 U.S.C. § 303(i). The statute specifically states:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment –
> (1) against the petitioners and in favor of the debtor for—
>   (A) costs; or
>   (B) a reasonable attorney's fee; or
> (2) against any petitioner that filed the petition in bad faith, for—
>   (A) any damages proximately caused by such filing; or
>   (B) punitive damages. (emphasis added)

As stated by the Seventh Circuit Court of Appeals, the plain language of the statute contemplates that fees and costs will not be awarded in all cases even though a party will normally incur fees and costs in seeking to dismiss a petition. In re Reid, 854 F. 2d 156, 159 (7th Cir. 1988).

40. Section 303(i) does not establish a presumption of attorney's fees when an involuntary petition is dismissed. In re Allied Riser Communs. Corp., 283 B.R. 420, 423-424 (Bankr. N.D. Tex. 2002).

41. Unless there is a "specific fee-shifting" statute or contractual authority, federal courts apply the "American Rule." Id at 424 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247-50 (1975)). The Allied Riser court explains:

> Under the Bankruptcy Code, Congress has, in § 303(i), established an exception to the American Rule by granting the court discretion to award attorney's fees upon dismissal of an involuntary petition. The statute does not, however, provide anything more than a grant of authority. Federal courts may not alter the exception from a grant of discretion to a presumption of an award of attorney's fees. The court, therefore, does not presume the award of attorney's fees. Rather, the court, in the exercise of its discretion, determines whether attorney's fees should be awarded to Allied Riser. By relaxing the American Rule, the authorization to award attorney's fees, if circumstances warrant, protects the debtor. If the factors do not weigh in favor of an award of attorney's fees, the court should apply the American Rule. See In re Charter Graphic Servs. V. Colotone, Inc., 230 B.R. 759, 772 (Bankr. N.D. Tex. 1998) (court must weigh

factors to determine whether to award attorney's fees).

42. Although Section 303(i) permits, but does not require, the Court to award costs, fees, actual and punitive damages if the petition is dismissed, Premier has failed to show any damages whatsoever. Although Premier's statement with respect to $3,000.00 in attorney's fees is some evidence of actual damage, it has specifically alleged nothing else. Of course, as a practical matter, Premier could hardly allege any other damage since it has already sworn in State Court that its net value is $333.00. This value, in turn, is based on its ownership of units in WECO. This is all Premier does: it exists under Texas law and its owns one-third of WECO. It has no other assets. It conducts no other business. According to Premier's Affidavit, it has no creditors other than Dillon and Davenport, which it omitted from the Affidavit. It has no loans and it is not trying to obtain credit. It is well known in the community that Premier has a large judgment against it. The involuntary petition did not damage Premier. If there was damage, that occurred before as a result of the findings of the jury. The petitioning creditors have not sought to harm Premier. Allied Riser, supra at 424.

43. Premier alleges that Dillon and Davenport filed the involuntary in bad faith. Collier on Bankruptcy surveys the different tests of bad faith relied upon by the Courts. Collier says the test that has gained the greatest acceptance is one which combines subjective and objective elements, a so-called Rule 9011 standard. COLLIER § 303.16[1].

44. Prior to filing the involuntary, the petitioning creditors knew from various sources, factual and legal, that Premier likely did not have more than 12 creditors, that no bona fide dispute existed, that Premier and Wynne had a bad track record of breaking contracts and that it would have extreme difficulty collecting any part of its claim outside of bankruptcy. Specifically, Dillon and Davenport knew that the state court had overruled several motions for summary judgment filed by Premier and its codefendants. Dillon and Davenport knew that at trial Wynne had testified under oath that he, acting through Premier, was trying to take Dillon's share in WECO. Dillon and Davenport knew that a jury found that Premier and its codefendants converted Dillon's interest in WECO causing damages of $70,000,000.00 through a conspiracy and with malice. A judgment had been entered to this effect. Most important, Dillon and Davenport knew that Premier's codefendants, Allen and Allen Family, thought so little of their chances on appeal that they settled with Dillon and Davenport by surrendering Allen

Family's interest in WECO. By any objective standard, the claims of Dillon and Davenport were not and are not in bona fide dispute.

45. Prior to filing the involuntary, Dillon and Davenport knew, based on the K-1's it received in 2006 and 2007 from WECO reflecting pro rata losses of $131,449.00 and $164,572.00, respectively, that Premier's capital account, as of January 1, 2008, should be a negative of $530,402.00. The petitioning creditors also knew that Wynne had testified in State Court that his wife and children owned Premier, that the net worth of Premier was probably two and a half million dollars and that Premier's sole asset was its interest in WECO. They also knew, and the jury found, that Premier had violated its fiduciary duty to WECO and had breached the WECO Limited Partnership Agreement. After the Allen settlement, Dillon and Davenport discovered that Premier and the co-defendants had breached other duties to WECO, essentially looting it to pay all of the costs of the State Court Action benefiting Premier and the other codefendants but not WECO. Finally, the petitioning creditors heard a rumor that Wynne had transferred his interest in Rotary Exploration, his chief operating company, to his son, making collection of their Judgment against Wynne more difficult. Counsel for Wynne denied this rumor. Counsel for Dillon and Davenport requested that counsel for Wynne sign a letter verifying that such a transfer did not take place. Counsel for Wynne refused to do so. The clear implication was that the transfer had taken place or counsel for Wynne did not trust his client enough to sign such a representation. Based upon Wynne's well documented track record, Dillon and Davenport were concerned that Wynne might well cause Premier's interest in WECO to be transferred to a third party, notwithstanding contractual prohibitions.

46. Since its only asset is its interest in WECO, a judgment creditor of Premier has only one collection remedy, a Charging Order. TEX. REV. CIV. STAT. ART. 6132a-1 Sec. 7.03(c). As a practical matter, this means that the judgment creditor is only entitled to receive any distribution to which Premier would be entitled. Id. at Sec. 7.03(a). However, if Premier becomes a "Bankrupt Partner" as that term is defined in the WECO Limited Partnership Agreement, WECO may purchase Premier's interest in WECO for its fair market value. WECO Limited Partnership Agreement §10.3. Because of the provision of Texas law and the Partnership Agreement, the only way for Dillon and Davenport to collect any significant part of their claim is for Premier to become a Bankrupt Partner under the Agreement.

47. The petitioning creditors have established that based upon the combined subjective and objective elements, the petition was not filed in bad faith. There is no evidence that Dillon and Davenport sought to harm Premier. Based upon Wynne's testimony in state court and their knowledge of Premier's completely inactive business operations, Dillon and Davenport reasonably believed that Premier has less than twelve creditors. This belief was subsequently confirmed by Premier's Affidavit and Premier's failure to affirmatively state it has more than twelve creditors or to file the required list of such creditors. FED. BANKR. RULE 1003(b). The factors bearing on whether their claims are subject to bona fide dispute show clearly that they are not and certainly Dillon and Davenport were reasonably entitled to believe their legal position on that question was established. The argument that the petitioning creditors ignored state law collection procedures is simply wrong. The only collection procedure in place is a Charging Order which is designed to protect a limited partner like Premier while freezing out its judgment creditors. For example, the Final Judgment accrues interest at the rate of 5% or almost three million dollars annually. WECO has never made a distribution to its limited partners. The only way for the petitioning creditors to collect any part of their claims, is through the bankruptcy of Premier. There is no evidence that the involuntary adversely affected the business of Premier, indeed Premier conducts no business that could be adversely impacted.

48. It is clear that the actions of the petitioning creditors were reasonable under the circumstances. Their motivation of seeking some part of their damages as creditors of a bankrupt estate is legal and permissible. Allied Riser, supra at 424.

### F. The Petitioning Creditors and Counsel Complied with Rule 9011 and Have Not Violated 28 U.S.C. § 1927

49. In Sections V and VI of its Answer, Premier requests sanctions against the petitioning creditors and their counsel under Bankruptcy Rule 9011, 28 U.S.C. § 1927 and, as a catch all, the Court's general jurisdiction under 11 U.S.C. § 105. Premier's requests are a calculated effort to exacerbate the grievous harm it has already done to Dillon and, indirectly, Davenport, and prevent Dillon and Davenport from exercising their legal remedies. At the conclusion of the hearing, after denying the requests of Premier, the Court should award

Dillon and Davenport its reasonable fees and expenses in opposing the request. FED. BANKR. RULE 9011(1)(A).

50. In order to impose a Rule 9011 sanction, the court must find that a petition has been filed that has no chance of success under existing precedents and that fails to advance a reasonable argument to extend, modify or reverse the law as it stands. Matter of Cohoes Indus. Terminal, Inc., 931 F. 2d 222, 227 (2nd Cir. 1991). Premier has the burden of proving that the petitioning creditors and/or their counsel filed an involuntary petition that was entirely without merit. In re Squillente, 259 B.R. 548, 552 (Bankr. D. Conn. 2001).

51. The requests of Premier fail Rule 9011. State court counsel and bankruptcy counsel for the petitioning creditors reasonably believed that the judgment of Dillon and Davenport was not subject to substantial legal or factual question and that the judgment, even if stayed and on appeal, was entitled to issue and claims preclusion or there was a good faith argument it was entitled to issue and claim preclusion. See Scurlock, supra at 6-7 and Walton Plywood, supra at 325-326. Counsel also knew that two of Premier's codefendants had settled, post verdict, corroborating counsel's view that an appeal of the Judgment had little or no value. Counsel was aware that Wynne had made admissions at trial which supported the jury's verdict and undercut Premier's counterclaim. Counsel therefore, after reasonable inquiry, had legally sufficient grounds to believe no bona fide dispute existed as to the Judgment.

52. Counsel for petitioning creditors still does not know if Premier has more than twelve creditors. All of the available indicators are that it does not. It was formed by Wynne solely for the purpose of owning one-third of WECO. It does not operate a business. Premier submitted an Affidavit to the State Court stating that it had no liabilities. Premier's Answer does not affirmatively state that there are more than twelve creditors as required by the Bankruptcy Rules nor is there the required list of such creditors. Premier must be judicially estopped from taking inconsistent positions, if it alleges there are more than twelve creditors. Even if there are, the two creditor petition was filed in good faith and additional creditors, if they exist, are permitted to join. FED. BANKR. RULE 1003(b), In re Alta Title Co., 55 B.R. 133, 137 (Bankr. Utah 1985).

53. As demonstrated earlier, the petition was not filed for an improper purpose or to harm Premier. Under state law, the ability of Dillon and Davenport to collect a significant part of their Judgment is limited to a Charging Order. So far at least, no distributions have been made to any of the limited partners of WECO.

However, Premier does have value if it is bankrupt since WECO is permitted to pay the bankruptcy estate its fair market value in exchange for its interest in WECO. Premier has not been harmed by the petition because it has no ongoing business other than owning one-third of WECO. The filing of the petition alone does not harm that business.

54. Because Premier cannot sustain its burden, and because the actions of the petitioning creditors and their counsel have been well founded, the Court should deny the request for Rule 9011 sanctions, the request for sanctions under 28 U.S.C. § 1927 and the request for sanctions under § 105. The Court should then assess against Premier the fees and costs of the petitioning creditors in opposing these baseless requests.

PRAYER

Dillon Water Resources, L.P. and Dean Davenport and, to the extent necessary, their counsel pray that the Court deny the relief sought by Premier General Holdings, Ltd., grant the Order for Relief and assess fees and costs against Premier General Holdings, Ltd.

Dillon Water Resources, L.P. and Dean Davenport and, to the extent necessary, their counsel pray for general relief.

Respectfully submitted,

WARREN, DRUGAN & BARROWS, P.C.
800 Broadway
San Antonio, Texas 78215
Telephone: (210) 226-4131
Facsimile: (210) 224-6488

By: /S/ Robert L. Barrows
      Robert L. Barrows   01833500

Elliott S. Cappuccio
PULMAN, CAPPUCCIO & PULLEN, LLP
2161 NW Military Hwy, Suite 400
San Antonio, Texas 78213
Telephone: (210) 222-9494
Facsimile: (210) 892-1610

*Attorneys for Dillon Water Resources, L.P.*

CERTIFICATE OF SERVICE

       I certify that on the 31st day of August, 2009, the foregoing document was served by electronic delivery and/or facsimile on the following:

| | |
|---|---|
| James S. Wilkins | Thomas C. Hall |
| Willis & Wilkins, LLP | Hall & Bates, LLP |
| 100 W. Houston Street, Suite 1275 | 115 E. Travis, Suite 700 |
| San Antonio, Texas 78205 | San Antonio, Texas78205 |
| Facsimile (210) 271-9389 | Facsimile (210) 222-1156 |
| ***Counsel for Debtor*** | ***Counsel for Dean Davenport*** |

      /S/   Robert L. Barrows
Robert L. Barrows